# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

SHIJIE LIU,

      Petitioner,

v.                                                                                              Civ. No. 26-143 JB/GJF

PAMELA BONDI, in her official capacity as
U.S. Attorney General;

MARCOS CHARLES, in his official capacity as,
Acting Executive Associate Director,
Enforcement and Removal Operations;

TODD M. LYONS, in his official capacity as
Acting Director, Immigration and Customs
Enforcement;

KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of
Homeland Security;

PATTI REYNOLDS, in her official capacity as
Director of ICE Albuquerque Field Office; and

GEORGE DEDOS, in his official capacity as
Warden of Cibola County Correctional
Center,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (DKT. NO. 2)

THIS MATTER is before the Court on the *Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief* (Dkt. No. 2) ("Petition") filed by Petitioner Shijie Liu ("Petitioner" or "Mr. Liu").[1] Respondents Pamela Bondi, Marcos Charles, Todd Lyons, Kristi Noem, and Patti Reynolds (collectively, the "Federal Respondents") responded to the Petition.

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 4).

Resp., Dkt. No. 12. Respondent George Dedos, as Warden of the Cibola County Correctional Center ("Cibola") where Petitioner is being held, filed a separate response stating he has no independent authority to release Petitioner and takes no position on the habeas and/or bond relief sought. Resp., Dkt. No. 9.[2] Petitioner thereafter replied. Reply, Dkt. No. 15. The undersigned held a hearing by Zoom video on the Petition on March 23, 2026. Clerk's Minutes, Dkt. No. 18. At the request of counsel for Petitioner at the hearing, the Court permitted the parties to file an optional supplemental brief, which Petitioner timely filed. Supp. Br., Dkt. No. 19.

Having considered the Petition, the briefing, the law, and the arguments of counsel, the Court recommends that the Petition be granted as to Counts I, II, III, V, and VI and that the Court order a prompt individualized bond hearing before an immigration judge to be held within seven days. The Court, however, advises denying as unripe the request in Count IV for an order to enjoin removal to a third country.

## I.    INTRODUCTION

This case is one of hundreds of § 2241 habeas cases brought in this District and one of thousands brought in districts across the nation stemming from a new interpretation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A), by the United States Department of Homeland Security ("DHS"). From 1997 to 2025, through five successive presidential administrations, when United States Immigration and Customs Enforcement ("ICE") detained noncitizens[3] within the interior of the United States who did not have a pending order of removal, it did so under 8 U.S.C. § 1226. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th

---

[2] Given this representation that the arguments of respondents align, the Court will refer to them collectively as "Respondents" throughout this PFRD.

[3] The INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The Court uses "alien" and "noncitizen" interchangeably in this PFRD.

Cir. 2026). On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the country without being admitted or who arrive without proper documentation are subject to *mandatory* detention, regardless of their length of residency in the country, unless they are paroled under INA § 212(d)(5). *See id.*

The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025). The BIA held that the plain language of 8 U.S.C. § 1225(b)(2)(A) deprived immigration judges of authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225. Yajure Hurtado had crossed into the United States without inspection in 2022, lived in the United States for years, was granted temporary protected status in 2024 by the United States Citizenship and Immigration Services ("USCIS"), but was arrested after that status expired. *Id.* at 216-17. The BIA concluded, "Aliens, like respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228. "Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Id.*

The BIA considered significant the history and passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which substituted the term "admission" for "entry" and replaced deportation and exclusion proceedings with removal proceedings. *Id.* at 222-23. As the BIA explained, Congress enacted the IIRIRA to remedy the unintended consequence of having created a statutory scheme where aliens who enter without inspection could take advantage of greater procedural and substantive rights afforded in deportation proceedings, while aliens who presented themselves at the border were limited to more summary exclusion proceedings. *Id.* at 223 (quoting *Martinez v. Attorney General of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)).

Consequently, according to the BIA, aliens who enter without inspection or admission remain "applicants for admission," *id.* at 224, regardless how long they have lived here, until an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted," *id.* at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). In the wake of *Yajure Hurtado*, immigration judges have uniformly concluded that they lack jurisdiction to hold bond hearings for detainees held under § 1225(b)(2)(A).[4]

Here, Respondents contend that Petitioner is properly detained under § 1225(b)(2)(A) because he was present in the United States without being admitted or paroled. But Petitioner urges the Court to follow the vast majority of district courts and find that he may only be detained under § 1226, which entitles him to a bond hearing. For the following reasons, the Court recommends concluding that § 1225(b)(2)(A) does not apply to Petitioner, and that Respondents violated the INA and the Due Process Clause when subjecting him to mandatory detention for months without a bond hearing.

## II.    FACTUAL BACKGROUND[5]

Petitioner Shijie Liu is a Chinese national and Christian who fled religious persecution and entered the United States on April 28, 2023. Petition ¶¶ 1, 13, Dkt. No. 2. DHS held Mr. Liu in custody for approximately two days. *Id.* ¶ 15. On or around May 1, 2023, DHS released him from

---

[4] *Yajure Hurtado* is called a "precedential" opinion, which in this context means a decision identified by the BIA as binding authority on U.S. immigration courts. The Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Consequently, while binding on immigration courts, *Yajure Hurtado* is not binding on this Court.

[5] No evidence was attached by either party to the Petition or to the Response. The written response does not contest any of the facts alleged in the Petition, only the legal arguments. At the hearing, counsel for Respondents acknowledged that the Court may consider as true each fact in the petition. *See* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 3:06:09-3:06:45. Accordingly, the Court recommends finding the facts set forth in the Petition to be admitted by Respondents.

detention under INA § 236(a) on an Order of Supervision. *Id.* This release recognized that he did not pose a flight risk or a danger to the community. *Id.*

After his release, Petitioner timely filed his I-589 application for political asylum within the one-year deadline required by law. *Id.* ¶¶ 13, 16. He was scheduled for a Master Hearing with an immigration judge on January 9, 2026. *Id.* ¶ 14.

From April 2023 to December 2025, Petitioner complied with all supervision and immigration court requirements, attending every scheduled hearing and ICE check-in and notifying authorities of his address. *Id.* ¶ 17. He did not commit any crimes, became active in a local church community, maintained stable housing, and sought employment authorization. *Id.* ¶¶ 17-18. Nevertheless, on December 4, 2025, ICE officers detained Petitioner when he appeared for his regularly scheduled ICE check-in. *Id.* ¶ 19. ICE transferred him to Cibola County in New Mexico where he remains detained. *Id.* ¶ 20.

On January 6, 2026, Petitioner appeared before an immigration judge for a bond hearing. *Id.* ¶ 21. At the hearing, Petitioner withdrew his bond request. *See* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 2:44:46-2:46:11, 3:13:00-3:13:20.[6] Petitioner's asylum proceedings could take many months or even years to complete. Petition ¶ 22, Dkt. No. 2.

### III.    PROCEDURAL HISTORY

On January 23, 2026, Petitioner filed a *Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief* (Dkt. No. 2) under 28 U.S.C. § 2241 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. *See* Petition ¶¶ 1, 4, Dkt. No. 2.

---

[6] The only fact counsel for Respondents contested at the hearing was regarding what occurred at the bond hearing. According to Respondents, Petitioner withdrew his request for bond at the end of his immigration bond hearing. Counsel for Petitioner, after reviewing the immigration record, agreed with that representation. The Court therefore considers this fact undisputed.

Petitioner brings the following counts: violation of the INA (Count I); violation of substantive and procedural due process arising from his prolonged mandatory detention without an individualized bond hearing (Count II); violation of the Equal Protection Clause (Count III); entitlement to a stay of removal to any third country (Count IV);  entitlement to a stay of out-of-district transfer (Count V); and petition for § 2241 writ of habeas corpus (Count VI). *See id.* ¶¶ 26-83. Despite listing six separate counts, only the first three counts state causes of action brought under § 2241. Counts IV, V, and VI are requests for specific remedies.[7]

For remedies, Petitioner seeks several. First, he requests a writ ordering his immediate release. Petition ¶ 60, ¶ A, Dkt. No. 2. Second, and alternatively, he asks for an individualized bond hearing before an immigration judge within seven days at which (i) the government bears the burden of proving by clear and convincing evidence that he poses a danger or flight risk, and at which (ii) the immigration judge must consider his individual circumstances and (iii) alternatives to detention. *Id.* ¶ 61, ¶ B. Third, Petitioner seeks an order staying removal to a third country unless he receives at least 30 days advance written notice identifying the proposed country of removal, a reasonable opportunity to gather evidence regarding conditions in that country, and a hearing before an immigration judge on any withholding or Convention Against Torture ("CAT") claims specific to that country. *Id.* ¶ 72, ¶ C. Fourth, Petitioner requests an order enjoining his transfer outside this judicial district while the Petition is pending and 72 hours advance notice before any attempted transfer. *Id.* ¶ 79, ¶ D. Fifth, he seeks an order to show cause requiring a response within three days. *See id.* ¶ E. Finally, he asks for an award of costs and attorney's fees. *Id.* ¶ F.

This Court entered an *Order to Show Cause* directing Respondents to respond to the Petition within 14 days and show cause why the requested relief should not be granted. Order, Dkt.

---

[7] At the hearing, counsel for Petitioner agreed with the Court that Counts IV-VI are remedies, not freestanding legal claims. *See* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 2:31:27-21:31:53.

No. 5. The Court found good cause to allow Respondents more than three days to respond. *Id.* at 2 n.1. Respondents nonetheless failed to timely respond, prompting Petitioner to file a motion to compel (Dkt. No. 7). The Court entered another *Order to Show Cause*, this time directing Respondents to respond to the Petition within three days. Order 2, Dkt. No. 8. The Court gave notice that the failure to respond could result in a recommendation that the Petition be granted. *Id.* They then responded within the requisite three business days. Resps., Dkt. Nos. 9-10, 12-13. Given the Court's orders to show cause and that Respondents have now responded, Petitioner's request for an order to show cause requiring a response within three days is moot and should be denied.

The Respondents filed a three-page, admittedly "abbreviated response" to the Petition "in lieu of a formal responsive memorandum of law to preserve the legal issues, to conserve judicial and party resources, and to expedite the Court's consideration of this matter." Resp. 1, Dkt. No. 12. Respondents "reviewed the Amended Petition and determined that the legal issues presented concern the statutory authority for ICE's detention of Petitioner under 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a), whether Petitioner is entitled to a bond hearing, and whether Petitioner must first exhaust his administrative remedies before applying to this Court." *Id.* Relying on *Yajure Hurtado*, the presiding judge's decision in *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005 (D.N.M. Jan. 20, 2026), and the Fifth Circuit's *Buenrostro-Mendez v. Bondi* decision, 166 F.4th 494 (5th Cir. 2026), Respondents assert that Petitioner is "seeking admission" and subject to mandatory detention under § 1225(b)(2) because he was present in the United States without being admitted or paroled and had filed an asylum application. *Id.* at 1-2. Respondents incorporate by reference the legal arguments presented in their response brief in *Singh v. Noem* but note they "do not consent to issuance of the writ and reserve all rights, including the right to appeal." Resp. 2, Dkt. No. 12. Respondents offered no other legal arguments in their brief.

In reply, Petitioner asserts that Respondents failed to address, and thereby waived, five distinct issues raised in the Petition: (1) the constitutional due process claim regarding prolonged detention; (2) the equal protection claim; (3) the request for a stay of removal to any third country; (4) the request for a stay of out-of-district transfer; and (5) the judicial estoppel argument. Reply 2, Dkt. No. 15. As for Respondents' reliance on *Singh*, Petitioner argues that *Singh* does not resolve this case for two reasons: (1) *Singh* did not adjudicate whether prolonged detention without an individualized hearing violates due process with respect to Petitioner's specific circumstances; and (2) *Singh* was wrongly decided as a matter of statutory interpretation. *Id.* Petitioner argues that his application for asylum is a request for protection from removal granted to aliens already present in the country; it does not retroactively legalize an unlawful entry or constitute inspection-based authorization. Supp. Br. 1, Dkt. No. 19. Relying on *Sanchez v. Mayorkas*, 593 U.S. 409 (2021), and the BIA's decision in *Matter of V-X*, 26 I&N Dec. 147 (BIA 2013), he asserts that a completed asylum grant is not an admission, and thus applying for asylum is not "seeking admission." *Id.*

## IV.    RIPENESS OF COUNT IV

"The ripeness doctrine involves both constitutional requirements and prudential concerns." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). Constitutional ripeness arises from Article III's requirement that federal courts consider only cases or controversies. *Id.* Federal courts do not have the power to render advisory opinions. *Id.* Prudential ripeness turns on whether the issue is fit for judicial review and the hardship to the parties from withholding review. *Id.* A claim is not ripe for adjudication if it is based on contingent future events that may not occur. *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

In Count IV, Petitioner requests an order staying his removal to a third country unless he receives at least 30 days advance written notice, a reasonable opportunity to gather evidence

regarding conditions in that country, and a hearing before an immigration judge on any withholding or CAT claims specific to that country. Petition ¶ 72, ¶ C. It is undisputed that there is not yet a final order of removal in Petitioner's immigration case. That Respondents will seek to remove him to a third country is therefore a contingent future event that may not occur at all. Although Respondents did not specifically object to this form of relief in their written response, at the hearing in response to the Court's question, counsel for Petitioner conceded that this request is not ripe without a final order of removal. *See* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 2:40:47-2:41:02. Because no final order of removal is in place, the Court recommends that Count IV and the requested remedy therein be denied without prejudice.

## V.      WAIVER OF COUNTS II, III, and V

According to Petitioner, Respondents addressed only the statutory question in Count I, so they conceded Counts II-V. Noting that Respondents mentioned exhaustion, Petitioner contends they did not adequately develop the argument. Reply 11, Dkt. No. 15. Indeed, Respondents said merely that a legal issue raised in the Petition was "whether Petitioner must first exhaust his administrative remedies before applying to this Court." Resp. 1, Dkt. No. 12. Respondents said nothing more about exhaustion, other than incorporating by reference the legal arguments presented in the response brief in *Singh v. Noem*, No. CIV 25-1110 JB/KK ("*Singh* Response"). On this record, the Court recommends finding that Respondents waived the argument that the Petition should be denied for failure to exhaust administrative remedies, waived arguments as to the merits of Counts II and III, and waived arguments against the remedy requested in Count V.

As the presiding judge ruled in *Macias v. New Mexico Dept. of Labor*, 300 F.R.D. 529 (D.N.M. 2014):

> [I]n the context of court filings, rule 10(c) of the Federal Rules of Civil Procedure outlines the process of "adoption by reference," which provides that "[a] statement

in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c) (title case omitted). In this context: (i) the secondary document must be a pleading—a complaint, cross-complaint, answer, or reply, *see* Fed. R. Civ. P. 7; (ii) the primary and secondary documents must be filed in the same case—**referencing a pleading from a different case is impermissible, even if the two cases involve the same parties**, *see* Wright et al., *supra*, § 1326, at 429; and (iii) a party may not incorporate district court pleadings by reference in an appellate court, *see* 10th Cir. R. 28.4, 28 U.S.C.; *Argota v. Miller*, 424 Fed. Appx. 769 (10th Cir. 2011) (unpublished). Additionally,

> [a]lthough there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation….

Wright et al., *supra*, § 1326, at 431–33 (footnotes omitted).

*Macias*, 300 F.R.D. at 562-63 (bold added).

The Court finds that Respondents did not properly incorporate arguments from a separate response brief in a different case involving different parties as to Counts II, III, and V and failure to exhaust. Notably, Respondents did not attach the *Singh* Response, which is a pleading that is under seal and not generally available to the public or to counsel in other cases. *See* Fed. R. Civ. P. 5.2(c) (limiting remote electronic access in immigration habeas cases). Even had Petitioner been able to access the *Singh* Response, it did not address substantive or procedural due process arguments based on the prolonged length of detention. Nor did it discuss equal protection. Petitioner is also correct that the *Singh* Response did not address a request for a stay of out-of-district transfer. The Honorable James O. Browning did not analyze exhaustion or equal protection in his *Singh* opinion. Accordingly, Respondents' cursory attempt to incorporate arguments from the *Singh* Response was ineffective and constitutes waiver of those arguments. *See United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013) (concluding that arguments presented in perfunctory and conclusory fashion were waived); *Gagandeep Singh v. Castro*, No. 26-cv-00168 JB/JFR, PFRD 5-6 (Dkt. No. 15) (D.N.M. Feb. 19, 2026) (Robbenhaar, J.) (concluding that

10

Respondents' attempt to incorporate arguments from *Singh* Response in a separate case was too cursory, and thus, Respondents waived arguments). The Court therefore recommends that the presiding judge grant the Petition as to Counts II, III, and V based on Respondents' failure to respond to the merits of the claims and remedy requested therein.

### VI.    ANALYSIS OF MERITS OF COUNT I AND PROPER REMEDIES

#### A.  Legal Background

An immigration judge conducts proceedings to decide the inadmissibility or deportability of an alien. 8 U.S.C. § 1229a(1)(1). Aliens placed in removal proceedings may be charged with an applicable ground of inadmissibility under § 1182(a) or of deportability under § 1227(a). Inadmissible aliens are "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). "[A]ny immigrant at the time of application for admission" who does not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title" is "inadmissible." *Id.* § 1182(a)(7)(A)(i)(I). Proceedings under § 1229a, unless otherwise specified, "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3).

The statutory provisions at issue in this case are those governing mandatory detention in 8 U.S.C. § 1225, and the "Apprehension and detention of aliens" in 8 U.S.C. § 1226. After discussing these INA provisions and implementing regulations in more detail, the Court will turn to an overview of due process law in the immigration context before analyzing how the law applies to Petitioner's detention.

### 1. Overview of Sections 1225 and 1226

"Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings" to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See id.* at 287-89. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

Generally, a non-citizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). The implementing regulations define an "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry , or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q). "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*[8] An alien who is caught trying to enter at a place other than a

---

[8] The Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Granting such parole, however, "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion

port of entry is treated as an arriving alien. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. §§ 1225(a)(1), (3)). All aliens "who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). "Admission" or "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(a) also provides for the "Withdrawal of application for admission": "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission to the United States*, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible." *Id.* § 1225(a)(5) (emphasis added).

Section 1225(b)(1) sets forth the procedures for the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). An immigration officer may order expedited removal of an arriving alien without further hearing or review if the officer determines that the alien is inadmissible under § 1182(a)(6)(C) or 1182(a)(7), provisions governing inadmissibility due to fraud, misrepresentation, or lack of valid documentation. 8 U.S.C. § 1225(b)(1)(A)(i); *Jennings*, 583 U.S. at 287 (citing 8

---

of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* The record before the Court shows that Petitioner was not granted humanitarian parole under § 1182(d)(5)(A).

U.S.C. § 1225(b)(1)(A)(i) (in turn citing §§ 1182(a)(6)(C), (a)(7))). Aliens also subject to expedited removal are those designated by the Attorney General in her discretion. *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)).

"Applicants can avoid expedited removal by claiming asylum." *Thuraissigiam*, 591 U.S. at 109. "If an applicant 'indicates either an intention to apply for asylum' or 'a fear of persecution,' the immigration officer 'shall refer the alien for an interview by an asylum officer.'" *Id.* (quoting §§ 1225(b)(1)(A)(i)-(ii)). "If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Id.* at 110 (citing 8 C.F.R. § 208.30(f)) (internal footnote omitted). Applicants who raise an asylum claim are nevertheless "detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* at 111 (quoting § 1225(b)(1)(B)(iii)(IV)). If an alien is found to have a credible fear, he may be detained pending further consideration of the asylum application. *Id. See also* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution …, the alien shall be detained for further consideration of the application for asylum.").

Section 1225(b)(2) governs "Inspection of other aliens." 8 U.S.C. § 1225(b)(2). "Section 1225(b)(2) is broader" than § 1225(b)(1) and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A) (bold added); *Jennings*, 583 U.S. at 288. Detention under

14

§ 1225(b) is mandatory until immigration officers decide either the application for asylum or until removal proceedings conclude. *Jennings*, 583 U.S. at 299-300.

Except for temporary parole under 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300. Under § 1182(d)(5)(A), arriving "aliens who claim asylum and establish a credible fear with an asylum pre-screening officer can be paroled at the point of entry while they pursue their asylum application." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005).

Section 1226(a) establishes the process of arresting and detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. As the Supreme Court explained, "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

According to the federal regulations pertaining to "Apprehension, custody, and detention," at the time of issuance of the notice to appear, or anytime afterwards and until removal proceedings are concluded, the noncitizen "may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). The regulations designate which immigration officers may issue an arrest warrant and which may serve it. *Id.*

Section 236.1(d)(1) provides:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, … the immigration judge is authorized to exercise the authority in section 236 of the Act … to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released….

8 C.F.R. § 236.1(d)(1).

The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings*, 583 U.S. at 288-89, 303. "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). In 2025, Congress passed the Laken Riley Act, which added additional criminal conduct triggering § 1226(c)'s custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[9] The Amendment mandated custody for aliens inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) who are charged, arrested, or convicted of burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime resulting in death or serious bodily injury to another person. 8 U.S.C. § 1226(E)(i)-(ii).

### 2. Overview of Due Process in Immigration Context

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The core concept of due process is protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Due process comes in two varieties. Substantive due process prevents the government from engaging in conduct that shocks

---

[9] Section 1226(c) does not apply here because it is undisputed Petitioner has no criminal history.

16

the conscience or interferes with rights implicit in the idea of ordered liberty. *Id.* at 847. Procedural due process, by contrast, requires notice and an opportunity to be heard appropriate to the nature of the case before depriving an individual of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.*

The Constitution gives the political branches "plenary authority to decide which aliens to admit" and the "power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. An alien seeking initial entry to the United States is only entitled to the process authorized by Congress. *Id.* at 138-39. "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107 (holding that alien detained near border shortly after unlawful entry did not "effect an entry" and only has those rights regarding admission that Congress provided by statute). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

**B. The Court should not deny Petition for failure to exhaust administrative remedies.**

Even if Respondents' attempted incorporation of the exhaustion argument were proper, the Court disagrees with Respondents that exhaustion was necessary here. The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must exhaust available administrative remedies before seeking habeas relief under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

Petitioner withdrew his request for a bond redetermination at the January 6, 2026 hearing before the immigration judge. The BIA's *Yajure Hurtado* decision, however, is binding on immigration courts and appears to categorically deny relief to noncitizens like Petitioner who DHS now considers to be subject to mandatory detention under § 1225(b). If Petitioner had insisted on his right to a bond hearing in his immigration case, the immigration judge, being bound by *Yajure Hurtado*, would have denied his request for lack of jurisdiction to grant bond. Consequently, the Court recommends finding that the futility exception to exhaustion applies and this Court may consider the habeas petition. *Cf. Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-010131-KG-JFR, 2025 WL 3187432, at *4 (D.N.M. Nov. 14, 2025) ("Under *Hurtado*, Immigration Judges ("IJs")

18

lack jurisdiction to provide § 1226(a) bond hearings to individuals in Mr. Pu Sacvin's position, rendering any attempt to seek relief directly from the agency futile."); *Mateo Francisco v. Dedos*, No. 1:25-cv-1229 MIS-GJF, 2026 WL 145456, at *8 (D.N.M. Jan. 20, 2026) (explaining that, where petitioner has shown that, had he asserted right to bond hearing, immigration judge, being bound by *Yajure Hurtado*, would deny his request for release for lack of jurisdiction to grant bond, futility exception to exhaustion applies and court may consider habeas petition), *PFRD adopted by* 2026 WL 300319 (D.N.M. Feb. 4, 2026).

### C.  Petitioner's detention for months without bond hearing violates INA.

Petitioner argues that § 1226 governs the detention of aliens already present in the interior of the United States, while § 1225 applies at the borders and ports of entry. He urges the Court to follow the reasoning of the many courts that have concluded that "seeking admission" means the present-tense action of seeking entry at an inspection at the border, and that § 1225(b)(2)(A) does not apply to aliens who entered the country years prior. According to Petitioner, the Government's position is inconsistent with the structure of the INA, its implementing regulations, the Laken Riley Act, decades of practice and understanding, and *Jennings*. Finally, he contends that the constitutional avoidance doctrine counsels fidelity to the past interpretation of the INA and applying § 1226.[10] For their part, Respondents assert that Petitioner is subject to mandatory

---

[10] Petitioner also argues that the Government should be estopped from its current position based on an exchange that occurred during oral argument in *Jennings* between counsel for the government and Justice Sonia Sotomayor in which counsel said long-term resident aliens would be held under § 1226(a), not 1225. *See* Petition ¶ 34, Dkt. No. 2 (citing Transcript of Oral Argument at 49-50, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2016/15-1204_k536.pdf)). At the March 23, 2026 hearing, the Court asked whether a statement made by the interim solicitor general representing a prior administration can bind subsequent administrations. *See* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 2:18:38-2:19:42. Counsel for Petitioner conceded that this administration may not be bound by the statements of another administration's interim solicitor at prior oral arguments, and he did not expect the Court to ground relief purely on that argument. *See id.* at 2:19:42-2:20:07. Notably, the Tenth Circuit applies the judicial estoppel doctrine "both narrowly and cautiously." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 910 (10th Cir. 2016) (quoting *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015)). Additionally, the position to be estopped "must generally be one of fact rather than of law or legal theory." *Id.* at 912. The Court declines to rely on judicial estoppel to resolve Count I.

detention under § 1225, adopting the reasoning of the BIA's *Yajure Hurtado* decision, the Fifth Circuit panel majority decision in *Buenrostro-Mendez*, and the presiding judge's decision in *Singh*. *See* Resp. 1-2 & n.2, Dkt. No. 12.

This Court parts ways with Respondents' analysis and instead concludes from the text and structure of § 1225 that "seeking admission" has a meaning independent of "applicant for admission." The text of § 1225(b)(2)(A) makes clear that it applies to (1) "an applicant for admission", (2) who is "seeking admission," and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The provision therefore limits mandatory detention only to those applicants for admission who are also seeking admission. *See Castanon-Nava v. U.S. Dept. of Homeland Security*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely[] limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)."); *Singh*, 2026 WL 146005, at *20-21 (explaining that "seeking admission" has separate meaning and narrows broader universe of "applicants for admission"). To construe "applicant for admission" to be the same as an alien "seeking admission" would render the latter phrase surplusage. *See Castanon-Nava*, 161 F.4th at 1061. Had Congress intended all applicants for admission to be detained, it could have drafted § 1225(b)(2)(A) far more simply: "Subject to subparagraphs (B) and (C), if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained…." Instead, Congress limited detention to those applicants for admission who are not clearly and beyond a doubt entitled to be admitted *and* who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A).

Furthermore, the statute's use of the present participle "seeking" demonstrates the need for the noncitizen to be taking some action *at present* in attempting to gain admission. This interpretation also accords with § 1225(a)(3), which suggests the terms are not coterminous: "All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). If the terms had the same meaning, it would be redundant to use "seeking admission" in § 1225(a)(3).

The Court is well aware that two circuits, in 2-1 decisions, have concluded the opposite. After completion of briefing in this case, the Eighth Circuit agreed with the Fifth Circuit's reasoning in *Buenrostro-Mendez* that the phrase "applicant for admission" and "seeking admission" mean the same. *Avila v. Bondi*, __ F.4th __, 2026 WL 819258, at *3 (Mar. 25, 2026) (quoting with approval *Buenrostro-Mendez*, 166 F.4th at 502). Both circuits held that an alien who entered the United States many years ago without inspection and lacking legal documents authorizing his admission may be detained without bond under § 1225(b)(2)(A). *Id.* at *1, 6; *Buenrostro-Mendez*, 166 F.4th at 498-500. Neither *Avila* nor *Buenrostro-Mendez* is binding on this Court, however, and this Court declines to follow their reasoning.

Having determined that "seeking admission" has its own separate meaning, the Court must next discern what that meaning is. Guided by the statutory definition of "admission," the Court concludes that "seeking admission" is seeking "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). While the term "lawful" is not separately defined in the INA, *see* 8 U.S.C. § 1101, the term lawful entry refers to the process in which an alien is inspected and granted entry into the United States by an immigration officer. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (explaining that

21

"admission" under § 1101(a)(13)(A) "refers to a procedurally regular admission and not a substantively lawful admission"); *Singh*, 2026 WL 146005, at *35 ("Admission requires at minimum 'procedural regularity' with entry procedures.") (quoting *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010)).

Petitioner urges the Court to find that § 1225(b)(2) applies to people arriving at United States' ports of entry or who recently entered the United States, as § 1225's framework is premised on inspection at the border of people who are "seeking admission" to the United States. Indeed, the Supreme Court stated as much. *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (Emphasis added).

The structure and title of § 1225 also support this interpretation. The title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). Section 1225 is titled, "*Inspection* by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). Those terms suggest that § 1225 applies during inspection at the border. The text of § 1225 reinforces that its scope is focused on the inspection process. *See, e.g.*, 8 U.S.C. § 1225(a)(3). "By anchoring § 1225 in inspection concepts that Congress defines, it signals that an inspection at the threshold of entry triggers the powers and procedures that follow." *Singh*, 2026 WL 146005, at *14. The implementing regulations likewise tie such inspections to the border. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer

22

at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section."). Consequently, the text and structure of § 1225 suggest that an alien "seeking admission" is one who does so at the border.

The legislative history accords with this construction. Before passage of the IIRIRA, 8 U.S.C. § 1252(a)(1) provided that noncitizens arrested in the United States pending a determination of deportability could be released on bond. *See* 8 U.S.C. § 1252(a)(1) (1996). After passage of the IIRIRA, § 1226(a) now governs the apprehension and detention of aliens on a warrant. 8 U.S.C. § 1226(a). When Congress passed the IIRIRA, it noted that the new § 1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469(I), at 229 (Mar. 4, 1996). The Executive Office for Immigration Review drafted regulations in 1997 similarly explaining that noncitizens present in the country without having been admitted or paroled, despite remaining applicants for admission, were nonetheless eligible for bond and bond redetermination under § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Given the longstanding practice of detaining noncitizens living in the United States on an arrest warrant and with the chance for bond, the legislative history suggests that Congress did not intend to alter this practice with the IIRIRA. Moreover, the fact that for decades the Executive Branch also did not interpret the IIRIRA in the manner urged by Respondents here or to use its purported mandatory detention authority signifies that "seeking admission" meant seeking lawful entry at the border. *Cf. Bankamerica*

23

*Corp. v. United States*, 462 U.S. 122, 130-32 (1983) (explaining that, although authority granted by Congress cannot evaporate through lack of administrative exercise, the Government's failure for over 60 years to exercise the power it now claims under the statute strongly suggests that the statute should not be interpreted as granting such power).

Further supporting this interpretation is the following statutory history, as set forth by the Fifth Circuit in *Buenrostro-Mendez*:

> When Congress passed IIRIRA, it estimated that the detention mandate in § 1226(c) would require the detention of 45,000 new immigrants. See H.R. Rep. No. 104-469, pt. 1 at 118, 120, 123 (1996). Supposedly because Congress was worried about insufficient detention capacity, it included a provision that permitted delaying implementation of § 1226(c) for two years. IIRIRA § 303(b), 110 Stat. 3009-586 to 3009-587. IIRIRA did not include a similar provision for § 1225(b)(2)(A), even though, under the government's interpretation, § 1225(b)(2)(A) would require the detention of far more than 45,000 aliens. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that about two million aliens who had entered without inspection were present in the United States around IIRIRA's enactment in 1996).

166 F.4th at 507. Although the majority in *Buenrostro-Mendez* declined to speculate on Congress's reasons for the deferred implementation of § 1226(c) but not of § 1225(b)(2)(A), that difference is compelling evidence that Congress did not view the IIRIRA as mandating the detention under § 1225(b)(2)(A) of the estimated two million aliens present in the United States who had not been admitted. *See id.* at 516 (J. Douglas, dissenting) ("Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be. We would expect more than simple statutory silence if, and when, Congress were to intend a major departure.") (internal quotations, citation, and footnote omitted). As Judge Douglas noted, construing the statute to expect the detention of millions of aliens in detention facilities strained by merely 45,000 people is a proverbially large elephant stuffed in a very small mousehole, and not one Congress envisioned when it passed the IIRIRA. *Id.* at 514-17.

24

The recent enactment of the Laken Riley Act adds weight to this understanding of Congressional intent. The Act expressly required detention for noncitizens inadmissible under § 1182(a)(6)(A) – aliens present without being admitted or paroled – if they commit certain listed crimes. That specification in the Act would not have been necessary if Congress understood § 1225(b)(2) to require mandatory detention of all inadmissible aliens already present in the United States. *See*, *e.g.*, *Munoz Teran v. Bondi*, Case No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527, at *4 (D.N.M. Jan. 21, 2026) (Riggs, J.) (explaining that respondents' interpretation would render superfluous Laken Riley Act); *Cortes v. Holt*, Case No. CIV-25-1176-SLP, 2025 WL 147432, at *1, 6 (W.D. Okla. Jan. 20, 2026) (concluding that enactment of Laken Riley Act lends further support for application of § 1226 to detention of aliens who entered without inspection or admission and resided in United States for years).

Significantly, immigration officers do not detain aliens under § 1225 pursuant to a warrant, whereas § 1226 expressly provides for the arrest and detention of an alien on a warrant. 8 U.S.C. § 1226(a). The regulations implementing § 1226 confirm that the Form I-200 is used for arrests pursuant to an immigration officer's authority under § 1226. *See* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest."). Section 1226 also applies to aliens who are charged as inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E) (explaining that Attorney General shall take into custody any alien who is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) and is charged with certain identified crimes). The overall structure of §§ 1225 and 1226 demonstrates that detention under § 1225 is done as part of the inspection process upon arrival at the border before an alien makes entry into the United

25

States, and that after entry, § 1226 – with its warrant and bond hearing protections – applies to the apprehension and detention of inadmissible aliens within the interior of the country. *See Reyes-Martinez v. Woosley*, Civil Action No. 4:25-cv-150-RGJ, 2025 WL 3680330, at *7 (W.D. Ky. Dec. 18, 2025) (explaining that § 1225 detainees are detained upon arrival as a statutory function of the inspection process, not via an arrest pursuant to administrative warrant, which supports conclusion that § 1225 is for individuals seeking admission at the border who do not need to be arrested). After all, "government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Buenrostro-Mendez*, 166 F.4th at 519 (Douglas, J., dissenting).

The presiding judge in *Singh*, however, said that it would be "mistaken to read the provision as limited exclusively to physical border encounters." 2026 WL 146005, at *21. *Singh* held that an asylum applicant whose application is pending is nonetheless "seeking admission" and can be detained under § 1225(b)(2)(A). *See id.* at *35-36. *Singh* explained: "An alien may seek lawful entry at a port of entry, but an alien may also seek lawful admission from within the United States through statutory mechanisms such as an application for adjustment of status on Form I-485 or other congressionally authorized procedures for obtaining lawful admission." *Id.* at *21. *Singh* further reasoned that "seeking can also occur in the interior of the United States … when an alien who has not been admitted, an applicant for admission, makes some attempt to gain lawful admission, such as filing for an asylum or a visa." *Id.* at 35.

The Supreme Court, however, has clarified that lawful status and admission "are distinct concepts in immigration law." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). An adjustment of

status under § 1255 of the INA is a way for a nonimmigrant – a noncitizen lawfully present in the country on a designated, temporary basis – to obtain lawful permanent resident ("LPR") status generally so long as the nonimmigrant's presence is pursuant to a lawful admission. *See id.* at 411-12. In *Sanchez*, the noncitizen entered unlawfully, and after approximately 14 years, applied for Temporary Protected Status ("TPS"), entitling him to stay and work in the United States for as long as unsafe living conditions existed in his home country. *See id.* at 411-13. He applied for an adjustment to LPR status, which the USCIS denied because he had not been lawfully admitted to the United States. *Id.* at 413. The Supreme Court agreed because, although the TPS program gives foreign nationals nonimmigrant status, it does not admit them. *Id.* at 414. As relevant here, the Supreme Court explained:

> On the one hand, a foreign national can be admitted but not in lawful status—think of someone who legally entered the United States on a student visa, but stayed in the country long past graduation. *On the other hand, a foreign national can be in lawful status but not admitted—think of someone who entered the country unlawfully, but then received asylum*. The latter is the situation Sanchez is in, except that he received a different kind of lawful status. The TPS statute permits him to remain in the country; and it deems him in nonimmigrant status for purposes of applying to become an LPR. But the statute does not constructively "admit" a TPS recipient—that is, "consider[ ]" him as having entered the country "after inspection and authorization." § 1254a(f)(4); § 1101(a)(13)(A). And because a grant of TPS does not come with a ticket of admission, it does not eliminate the disqualifying effect of an unlawful entry.

*Id.* at 415-16 (emphasis added).

Based on *Sanchez*, the Court concludes that the filing of an application for asylum is not "seeking admission"; rather, it is seeking a "lawful status." As the Tenth Circuit elaborated:

> "[A]dmitted" and "admission" are defined as "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). This definition "is limited and does not encompass a post-entry adjustment of status," because it "refers expressly to *entry into* the United States, denoting by its plain terms passage into the country from abroad at a port of entry." *Negrete–Ramirez* [*v. Holder*], 741 F.3d [1047,] 1051 [(9th Cir. 2014)]; *see Papazoglou* [*v. Holder*], 725 F.3d [790,] 793 [(7th Cir. 2013)]

27

> ("That provision therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization."); *Bracamontes* [*v. Holder*], 675 F.3d [380,] 385 [(4th Cir. 2012)] ("Clearly, neither term includes an adjustment of status; instead, both contemplate a physical crossing of the border following the sanction and approval of United States authorities."); *Martinez* [*v. Mukasey*], 519 F.3d [532,] 544 [(5th Cir. 2008)] (recognizing that " 'admission' is the lawful *entry* of an alien after inspection, something quite different ... from post-entry adjustment of status"). Under the definition, Mr. Medina–Rosales was not "admitted" when he became an LPR after post-entry adjustment of status, because he did not enter the United States when he adjusted to that status.

*Medina-Rosales v. Holder*, 778 F.3d 1140, 1144-45 (10th Cir. 2015) (italics emphasis in original).

*See also Matter of V-X-, Respondent*, 26 I. & N. Dec. 147, 147 ("A grant of asylum is not an 'admission' to the United States under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2006)."). Requesting asylum is thus a request for an adjustment of status, not a request for admission. Because "seeking admission" requires actively requesting admission, the filing of an application for asylum does not amount to "seeking admission" within the meaning of § 1225(b)(2)(A).

Petitioner entered the United States nearly three years ago, at which time DHS briefly detained him. After finding that he did not pose a danger to the community or flight risk, DHS released Petitioner under INA § 236(a) on an Order of Supervision. Although he was not deemed substantively "admitted" at that time, he was given permission to enter the United States under the Order of Supervision. Petitioner then lived in the United States for over two years before ICE detained him in the interior of the country on December 4, 2025. At the time of his detention, Petitioner was not "seeking admission" as he had already entered the United States years prior with process. He therefore is detained under § 1226 and is entitled to a bond hearing.[11] The failure

---

[11] Given its interpretation of the statute based on text and history, this Court declines to address the additional issue raised by Petitioner of whether the constitutional avoidance doctrine compels the same result.

28

to provide him the requisite prompt bond hearing violates the INA. The Court therefore recommends granting the Petition on Count I.

### D. Prompt bond hearing in accordance with § 1226(a) is appropriate remedy for violation of INA.

The Court recommends that the appropriate remedy for the § 1226 violation is a prompt bond hearing before an immigration judge, not immediate release. *See*, *e.g.*, *Castillo v. De Andra Ybarra*, No. CIV 25-1074 JB/JFR, 2026 WL 370497, at *36 (D.N.M. Feb. 10, 2026) (explaining that, because noncitizen was not seeking admission, United States could not detain him under § 1225(b)(2), so it must detain him under § 1226(a) and afford him procedural protections the statute provides). As for the timing of the bond hearing, the Court recommends that the bond hearing be held within seven days.[12] If Respondents are unable or decline to follow § 1226's statutory requirements, the Court recommends they release him immediately. *Id.*

Petitioner also requests that the Court order the Government to bear the burden of clear and convincing evidence at the bond hearing regarding whether he poses a danger to the community or flight risk, and that the immigration judge must consider his individual circumstances and alternatives to detention. Petition ¶ 61, ¶ B, Dkt. No. 2. For the initial custody determination by the arresting immigration officer, governing regulations place the burden on the alien to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The BIA applied the same presumption in bond hearings before immigration judges. *See Castillo*,

---

[12] At the hearing, counsel for Respondents reported that seven days is often too accelerated for counsel for the noncitizen to receive notice and have adequate time to prepare, which has created some confusion as to whether the deadline must be met even when counsel for the noncitizen needs additional time to get ready for the bond hearing. *See* Mar. 23, 2026 Hr'g, Liberty Recording, ABQ-Gila_20260323_132113 at 3:06:46-3:09:09. The Court thus recommends clarifying in the order that the bond hearing be held within seven days, unless counsel for the noncitizen requests a brief continuance with the immigration judge based on a need for additional time to prepare adequately, in which case the bond hearing may be held at a later date within the timeframe suggested by the noncitizen's counsel.

2026 WL 370497, at *42 (quoting *In Re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)). Some courts have shifted the burden to the government at the bond hearing to show by clear and convincing evidence that the petitioner is either a danger to the community or a flight risk. *See*, *e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (citing *Salazar v. Dedos*, 2025 WL 2676729, at *6 (D.N.M.)). The presiding judge, however, concluded that a remedy challenging the burden at a bond hearing is outside the scope of the writ of habeas corpus "unless the bond hearing's existing structure is so weighed against the alien that the alien has no chance to be released on bond." *Castillo*, 2026 WL 370497, at *42. Because a § 1226(a) bond hearing requires only that the alien prove that he is not a flight risk or danger to the community, the current structure does not deny an alien a meaningful chance at success at achieving release. *Id.* The Court thus recommends that the presiding judge deny Petitioner's request that the Respondents carry the burden of clear and convincing evidence at the bond hearing and instead order that the bond hearing comply with § 1226 and its implementing regulations. *See id.*

In Count V, Petitioner seeks an order to enjoin his transfer outside this judicial district and 72 hours advance notice before any attempted transfer. Petition ¶ 79, ¶ D, Dkt. No. 2. Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Because Respondents did not object to this remedy in the response, the Court recommends the presiding judge grant the request to enjoin Petitioner's transfer outside the District of New Mexico while this habeas petition is pending or until Petitioner receives a final order of removal. *Cf. Castillo*, 2026 WL 370497, at *44 ("[T]he Court exercises its discretion under the All Writs Act only to enjoin Petitioners' unlawful removal from New Mexico while their habeas proceedings remain

pending.").[13] Given that the proposed remedy would prevent transfer, the Court need not also order 72 hours of advance notice of any attempted transfer.

With respect to Petitioner's request for an award of reasonable attorney's fees and costs, the Court finds this request premature unless and until the presiding judge grants relief on the Petition. Should the Court rule in Petitioner's favor on any of the substantive causes of action, the Court recommends Petitioner be afforded 30 days after entry of final judgment to submit a motion for attorney's fees and expenses, with an affidavit attached justifying requested fees and costs.

## VII.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the *Verified Petition for Writ of Habeas and Complaint for Declaratory and Injunctive Relief* (**Dkt. No. 2**) should be **GRANTED IN PART and DENIED IN PART** as follows:

A. The Petition should be **GRANTED** as to Counts I, II, III, V, and VI.

B. The Petition should be **DENIED** as to Count IV because the remedy requested therein is not ripe.

C. The following remedies requested in the Petition should be **GRANTED**:

    i. Issue a writ of habeas corpus ordering an individualized bond hearing before an immigration judge be held within seven days,

---

[13] The Court is not convinced that it would necessarily lose jurisdiction were Petitioner to be transferred out of New Mexico. *Cf. Ex parte Endo*, 323 U.S. 283, 304-06 (1944) (holding that district court acquired jurisdiction of habeas case filed in district where petitioner was then-located, and that court did not lose jurisdiction when the petitioner was transferred to another state where a person in whose custody the petitioner is remains within district); *Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. Mar. 10, 2015) (holding that "the District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition" while he was held in Colorado, and that his transfer to another state "does not defeat that initial jurisdiction") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 440–41 (2004)). *See also* Mar. 23, 2026 Hr'g, Liberty Recording, *ABQ-Gila_20260323_132113* at 2:41:06-2:41:48 (counsel for Petitioner agreed that this District would not lose jurisdiction over the case even if Petitioner were transferred to another district). The Court need not decide this issue, however, because Respondents did not object to the remedy to enjoin transferring Petitioner out of the District during the pendency of the case.

    ii.  Enter an order enjoining Petitioner's transfer outside this judicial district while this habeas action is proceeding.

D. The following remedies requested in the Petition should be **DENIED**:

    i.  The request for a writ ordering his immediate release from custody;

    ii.  The request to order the Government to bear the burden of proof at the bond hearing by clear and convincing evidence;

    iii.  The request for an order staying removal to a third country until Petitioner receives at least 30 days' advance written notice of the proposed country, an opportunity to gather evidence regarding that country, and a hearing on withholding and CAT claims specific to that country should be denied as unripe;

    iv.  The request for 72 hours' advance notice of any attempted transfer should be denied as moot; and

    v.  The request for an order to show cause requiring a response within three days should be denied as moot.

**SO RECOMMENDED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE